

**Dated: March 05, 2019.**

_____
**H. CHRISTOPHER MOTT
UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: § | | |
| ROY KEVIN POOL and § | | |
| CYNTHIA ANNE POOL § | | Case No. 18-11052-hcm |
| Debtors. § | | (Chapter 7) |

**OPINION DENYING OBJECTION TO
DEBTORS' CLAIM OF HOMESTEAD EXEMPTION**

Here, the Court wrestles with whether two separate parcels of land are both exempt as a rural homestead under Texas law, when one rural parcel is used to operate the debtors' body shop business. The Court concludes that the debtors may claim both parcels as a rural homestead protected under Texas law. As a result, the Court will deny the creditor's objection to the rural homestead exemption.

**I
PROCEDURAL BACKGROUND**

On August 8, 2018, Roy Kevin Pool and Cynthia Anne Pool ("Debtors"), filed a voluntary Chapter 7 bankruptcy case. John Patrick Lowe was appointed as trustee ("Trustee") for the Debtors' bankruptcy estate.

On October 15, 2018, the Trustee and Nathan Joshua Herrington ("Creditor") jointly filed their Objections to the Debtors' Claims of Exemption ("Objection") (dkt# 34),

1

objecting to the Debtors' claims of homestead exemption as to two separate, non-contiguous tracts of real property located in Llano County, Texas and Burnet County, Texas.

On October 31, 2018, the Debtors filed their Response to the Objection ("Response") (dkt# 35). In the Response, the Debtors denied several of the legal and factual contentions made in the Objection and requested that the Court deny the Objection.

At a hearing conducted on December 18, 2018, the Trustee advised the Court that he would no longer join the Creditor in objecting to the Debtors' exemptions. The Trustee then filed a notice of dismissal of his objections (dkt# 59). The Creditor continued to prosecute the Objection.

On December 20, 2018, the Court conducted a hearing on the merits of the Objection. Counsel for the Debtors and counsel for the Creditor presented legal argument. During the hearing, the Court admitted certain exhibits into evidence.[1] One of the Debtors, Mr. Pool, provided the only testimony.

At the conclusion of the hearing, the Court took its ruling on the Objection under advisement. The Court provided the parties with the opportunity to file post-hearing briefs. On December 20, 2019, the Debtors filed their brief with Legal Authorities (dkt# 61). On January 7, 2019, the Debtors filed their Supplemental Brief and Legal Authorities (dkt# 63).

---

[1] The Court will refer to the Debtors' Exhibits as "Ex. D-_"; and the Creditor's Exhibits as "Ex. C-_."

2

## II
## JURISDICTION

The Court has subject matter jurisdiction over the Objection under 28 U.S.C. § 1334(b). The Objection is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B) (allowance or disallowance of exemptions from property of the estate). As a result, the Court has authority and jurisdiction to enter a final order on the Objection. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to FED. R. BANKR. P. 7052 and 9014.

## III
## FINDINGS OF FACT

The Debtors claim two non-contiguous parcels of land as their exempt rural homestead under the Texas Constitution and the Texas Property Code in their Bankruptcy Schedules. First, the Debtors claim their residence comprising 1.4 acres in rural Sunrise Beach, Llano County, Texas ("Residence").[2] Second, the Debtors claim as exempt a separate, rural, non-contiguous tract of less than one acre in Kingsland, Burnet County, Texas, where Mr. Pool operates his automotive repair and restoration business known as "God's Hot Rod Shop" ("Body Shop").[3] Together, the Residence and the Body Shop comprise considerably less than 200 acres.

At the hearing, the parties stipulated that the Residence met the requirements for a rural homestead exemption. Although the parties did not dispute the Body Shop's rural

---

[2] The Debtors' Amended Schedule C refers to the Residence as "207 Mountain Top," and provides the following legal description of the property: "Unit 7, Lot 787, Sunrise Beach, Llano County, Texas." See Ex. C-3.

[3] The Debtors' Amended Schedule C refers to the Body Shop as "100 C.R. 127," and provides the following legal description of the property: "ABS A0419 Green J. Harwell, 0.871 Acres, Burnet County, Texas." See Ex. C-3.

character, they disagreed about whether the Debtors could properly claim the Body Shop as part of their exempt rural homestead.

Consequently, the argument and testimony presented by the parties at the hearing focused on the Body Shop's status as exempt homestead property. While the Debtors contended that the Body Shop was part of their rural homestead, the Creditor argued that the Body Shop was not exempt under Texas law.

In their Bankruptcy Schedules, the Debtors valued their Residence and the Body Shop at $140,000 and $200,000, respectively—totaling $340,000—the lion's share of the Debtors' assets. Both properties, however, are subject to purchase money liens held by other secured creditors (about $88,477 on the Residence and $147,440 on the Body Shop). As a result, the claimed exemptions listed on their Bankruptcy Schedules amounted to $51,523 in the Residence, and $52,560 in the Body Shop—for a total homestead exemption claim of $104,083.

As the crow flies, the Residence is just over two miles from the Body Shop. As the car drives, the properties are about ten miles apart.[4] The Residence and the Body Shop are on separate (non-contiguous) parcels of land. *See* Ex. C-6. The Residence and the Body Shop are both rural (not urban) properties.

Purchased by the Debtors in 2015, the Body Shop specializes in the repair, restoration, and maintenance of classic American automobiles. *See* Ex. D-4. Both Debtors actively work at the Body Shop four to five days per week, although Mr. Pool typically spends more time working at the Body Shop than Ms. Pool.

---

[4] At the time of the hearing on December 20, 2018, the distance by car was about 23 miles due to a bridge closure resulting from severe flood damage in the fall of 2018.

The Debtors earn almost all their income from the work they perform at the Body Shop, which they use to support their family and to maintain and pay expenses associated with their Residence. *See* Schedules I and J, Ex. C-3. Mr. Pool is the head of the Debtors' household, and he works full-time at the Body Shop. He does not have any expertise other than working on cars; the Body Shop is where Mr. Pool practices his vocation. Without the Body Shop as their source of income, the Debtors and their minor daughter, as a family, would face great financial difficulty. The Body Shop income also allows the Debtors to cope with less foreseeable expenses, like those the Debtors recently incurred to address their daughter's medical issues.

The Debtors also use the Body Shop for purposes connected to their Residence. Mr. Pool uses the Body Shop's equipment and facilities to repair and maintain household items he brings there from the Residence. For example, on a number of occasions, Mr. Pool has made the short drive to the Body Shop to repair washers, dryers, and lawn equipment used at the Residence. Mr. Pool also uses equipment and tools from the Body Shop for routine home improvement and repair projects at the Residence on a regular basis. At the Body Shop, Mr. Pool repairs the Debtors' personal cars stored and used at the Residence. In one instance, Mr. Pool fabricated a barbeque pit at the Body Shop for use at the Residence. In another, Mr. Pool used some of the Body Shop's tools to repair a gazebo at the Residence that had fallen into disrepair. While working at the Body Shop, Mr. Pool regularly utilizes certain facilities normally associated with a home, such as the Body Shop's kitchen and shower. On at least one occasion, Mr. Pool has spent the night on the Body Shop's premises after working late into the evening.

# IV
# CONCLUSIONS OF LAW

## A. Overview of the Texas Homestead Exemption

Section 522(b)(1) of the Bankruptcy Code allows debtors who file jointly (*i.e.*, as spouses) to claim certain property as exempt. 11 U.S.C. § 522(b)(1). In Texas, debtors may choose either federal or state law exemptions. *See, e.g.*, *Beckwith v. Harris Cty. (In re Norra)*, 421 B.R. 782, 788 (Bankr. S.D. Tex. 2009). In this bankruptcy case, the Debtors have chosen state law exemptions—specifically, the rural homestead exemption set forth in the Texas Constitution and Texas Property Code. *See* TEX. CONST. art. XVI, § 51; TEX. PROP. CODE § 41.002(b).

Under Texas law, homestead claimants have the initial burden of proof to establish the homestead status of property. *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 311 (5th Cir. 2003) (applying Texas law).

The rural homestead protection is enshrined in the Texas Constitution, which provides, in pertinent part, as follows:

> The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which *may be in one or more parcels*, with the improvements thereon . . .

TEX. CONST. art. XVI, § 51 (emphasis added).

The Texas Property Code defines a rural homestead for a family in the following manner:

> *If used for the purposes of a rural home*, the homestead shall consist of:
>
> (1) for a family, not more than 200 acres, *which may be in one or more parcels*, with the improvements thereon . . .

TEX. PROP. CODE § 41.002(b)(1) (emphasis added).

Courts have consistently interpreted Texas homestead law for a handful of virtually inalienable legal propositions. First, homesteads are "favorites of the law" in Texas. Courts liberally construe the homestead protections set forth in the Texas Constitution and the Texas Property Code. *See, e.g.*, *Perry,* 345 F. 3d at 316; *Bradley v. Pac. Sw. Bank (In re Bradley)*, 960 F.2d 502, 507 (5th Cir. 1992) (supporting citations omitted).

Second, a "rural" homestead may consist of one or more non-contiguous (separate) parcels. *See, e.g.*, *Autry v. Reasor*, 108 S.W. 1162, 1164 (Tex. 1908); *Fajkus v. First Nat'l Bank*, 735 S.W.2d 882, 884 (Tex. App.—Austin 1987, writ denied); *see also* TEX. PROP. CODE § 41.002(b). By contrast, if an "urban" homestead consists of more than one lot, the lots must be contiguous to be granted homestead protection. *See, e.g.*, *Seidemann v. New Braunfels State Bank*, 75 S.W. 2d 167, 167-68 (Tex. Civ. App.—Austin 1934, writ ref'd); *see also* TEX. PROP. CODE § 41.002(a) (urban homestead "may be in one or more contiguous lots, together with any improvements thereon").

Third, regardless of whether a property is urban or rural, claimants face little trouble proving that their place of residence falls within the homestead exemption. *See, e.g.*, *Bradley*, 960 F.2d at 507 ("[p]ossession and use of land by one who owns it and who resides upon it makes it the homestead *in law and fact.*") (emphasis in original) (supporting citations omitted).

Fourth, by statute, an "urban" homestead may include the claimant's business property (*i.e.,* "a place to exercise a calling or business"). TEX. PROP. CODE § 41.002(a); *see, e.g.*, *Haynes v. Vermillion*, 242 S.W.2d 444, 446 (Tex. Civ. App.—Fort Worth 1951, writ ref'd n.r.e.). By contrast, the statute granting "rural" homestead protection does not expressly include a claimant's business property. *See* TEX. PROP. CODE § 41.002(b).

7

Courts, however, generally describe rural homestead property as including property that is used in connection with the residence for the claimant's business, or for the "comfort, convenience, or support" of the family. *See, e.g., Perry,* 345 F. 3d at 317 (the purpose of rural and urban homestead exemptions is to "protect not only the home, but also the property that enables the head of the household to support the family"); *In re Schott*, 449 B.R. 697, 702 (Bankr. W.D. Tex. 2011) (to qualify as a rural homestead, one tract must be used as a residence and the other tract must be used for the "comfort, convenience, or support of the family".)

Despite these well-established principles of Texas homestead law, room for debate exists on the scope of a "rural business" homestead—the issue presented in the instant case.

### B. Rural Homestead Protection Extends to Business Property

The precise homestead issue in this case is whether the Debtors can claim their rural, non-contiguous property used for their business (the Body Shop) as exempt under Texas homestead law.

The Texas Property Code does not expressly protect a debtor's business as part of a rural homestead. *See* TEX. PROP. CODE § 41.002(b). However, the Fifth Circuit, after carefully examining Texas law, has concluded that a rural homestead may include property where a debtor conducts his business. *See Perry*, 345 F.3d at 316-8.

In *Perry*, the Fifth Circuit dealt with a debtor that claimed a "rural" homestead consisting of his residence and a contiguous tract where the debtor operated his business—a mobile home and RV park. *Id.* at 315. The bankruptcy court concluded that the tract where the debtor ran his business did not fall within the exemption, holding that

8

a rural homestead does not extend to business property and the operation of a business on the tract forfeited the homestead protection. *In re Perry,* 267 B.R. 759, 768 (Bankr. W. D. Tex. 2001). The Fifth Circuit (and the district court) reversed the bankruptcy court. The Fifth Circuit held that a rural homestead can include not only a debtor's residence but may also include property where a debtor operates his business. *See Perry,* 345 F. 3d at 318.

In reaching its decision, the Fifth Circuit recognized that a "business element has historically been embedded within the definition of a rural homestead" under Texas law, and cited a number of Texas cases in support. *See id.* at 316-18. The Fifth Circuit quoted a Texas Court of Appeals decision explaining the purpose of the rural homestead exemption as follows:

> Undoubtedly the purpose of the homestead exemption is to shield from creditors a place for the family to live *and a place for the head of the family to exercise his calling or business to enable him to support the family*. It was contemplated that a rural homestead would serve both purposes, and, therefore, no separate provision was made for a residence and a business homestead, although it was permitted that the homestead consist of separate and detached parts, if used for the purposes of a home . . .

*Id.* at 317 (citing *Thomas v. Creager*, 107 S.W.2d 705, 709 (Tex. Civ. App.—Eastland 1937, writ dism'd w.o.j.) (emphasis in original).

At bottom, the Fifth Circuit concluded that the "purpose of the homestead exemptions, both urban *and* rural, has been to protect not only the home, but also the property that enables the head of the household to support the family." *Perry,* 345 F. 3d. at 317 (emphasis in original). The Fifth Circuit ultimately remanded the *Perry* case to the

9

bankruptcy court to determine if the debtor abandoned the RV and mobile home portion of the tract he rented out to others.[5]

On its face, the Fifth Circuit decision in *Perry* seems to provide a clear-cut answer to the issue presented in this case. The Body Shop and the Residence are "rural" properties that have been claimed by the Debtors as their exempt "rural" homestead. The Body Shop is the Debtors' business. The Body Shop generates income for the Debtors, which supports their family and their Residence. The Debtors have not rented the Body Shop to others, so abandonment is not an issue here.

But the seemingly clear-cut answer the *Perry* decision provides is muddied by a footnote the Fifth Circuit added in dictum. In the footnote, the Fifth Circuit observed that *if* the mobile home and RV park had been "separated" from the debtor's residence, the *Perry* case would have been decided differently:

> Property that is *separated* from the land on which the claimant resides must be used principally for the purposes of a home if it is to be included in a claimant's rural homestead . . . *Separate* land that is devoted primarily to generating income for the family, however, is not used principally for home purposes and thus is not included in the rural homestead.

*Perry,* 345 F. 3d at 318, n. 22 (emphasis added) (internal citations omitted).

Here, the Creditor (understandably) seizes upon this *Perry* footnote. The Creditor argues that, because the Body Shop is on a *separate* (non-contiguous) tract of land from the Residence and generates income, the Debtors cannot claim the Body Shop as their rural business homestead. Upon close examination, however, this Court finds that the

---

[5] Remand to the bankruptcy court was necessary, as the Fifth Circuit recognized the significant body of Texas case law holding that continuously renting a portion of a homestead may constitute an abandonment of that portion of the homestead. *Perry*, 345 F. 3d at 318-9 (citing *Mays v. Mays*, 43 S.W.2d 148, 152 (Tex. Civ. App.—Beaumont 1931, writ ref'd); *Texas Bldg. & Mortg. Co. v. Morris*, 123 S.W.2d 365, 371 (Tex. Civ. App.—Beaumont 1938, writ dism'd)).

broadly-worded *Perry* footnote relied upon by the Creditor is taken out of context and is not controlling. First, the footnote is dictum, and therefore, not binding. Second, the *Perry* footnote appears to make an overbroad observation inconsistent with the fundamental legal principle that a rural homestead can include a separate (*i.e.*, non-contiguous) tract that generates income to support a family.

    **1.** ***The Perry Footnote is Non-Binding Dictum.***

To begin with, the *Perry* footnote relied upon by the Creditor is dictum that the Court is not bound to follow. Obiter dictum ("dictum") is defined as: "[a] judicial comment . . . that is unnecessary to the decision in the case and therefore not precedential." *Perez v. Stephens*, 784 F.3d 276, 281 (5th Cir. 2015) (quoting BLACK'S LAW DICTIONARY (10th ed. 2014). A statement is dictum if it "could have been deleted without seriously impairing the analytical foundations of the holding" and "being peripheral, may not have received the full and careful consideration of the court that uttered it." *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004) (supporting citations omitted). As such, dictum is not precedential—it does not bind future courts. *See id.*

The *Perry* footnote was unnecessary to the Fifth Circuit's decision in that case. Specifically, the footnote briefly commented on a hypothetical scenario of a rural business homestead that included a *non-contiguous* (*i.e.*, separate) tract of land. However, the holding and factual setting in *Perry* dealt with a rural business homestead on a *contiguous* (*i.e.*, not separate) tract of land. *See Perry,* 345 F. 3d at 307, 315. The commentary contained in the *Perry* footnote was peripheral and unnecessary to the Fifth Circuit's holding in that case. As a result, the *Perry* footnote is dictum and is not binding here.

11

Indeed, the *Perry* opinion itself recognizes the peril of relying on Fifth Circuit dicta concerning Texas homestead law. In *Perry,* the bankruptcy court held that a debtor's business can never be part of a rural homestead under Texas law, relying on a "sweeping" footnoted statement made in dictum by the Fifth Circuit in its previous decision in *Bradley*. 345 F.3d at 316 (citing *Bradley*, 960 F.2d at 506 n. 6). The Fifth Circuit, in *Perry*, overruled the bankruptcy court, recognizing that the *Bradley* footnote was non-binding dictum. *Id.* Accordingly, the Fifth Circuit concluded in *Perry* that the bankruptcy court's reliance on the prior dictum of the Fifth Circuit was erroneous. *See Perry*, 345 F. 3d at 315-16.

**2. *Separate, Non-Contiguous Property Used to Support a Family May be Part of a Rural Homestead***

For several reasons, the Court respectfully disagrees with the broad dictum in the *Perry* footnote that a rural homestead cannot include *separate* (non-contiguous) rural property used to generate income for the family. Instead, the Court holds that a rural homestead under Texas law can include non-contiguous (separate) property where a debtor actively operates a business to support a debtor's family and has a nexus to the residence.

First, the dictum recited in *Perry* suggesting that a rural homestead cannot be on "separate" land is fundamentally inconsistent with the Texas Constitution and the Texas Property Code. Both expressly recognize that a "rural" homestead can be located on *non-contiguous* (*i.e.*, separate) parcels. *See* TEX. CONST. art. XVI, § 51; TEX. PROP. CODE § 41.002(b); *see also Autry*, 108 S.W. at 1164; *Fajkus*, 735 S.W.2d at 884. By contrast, only an "urban" homestead must be on *contiguous* (*i.e.*, not separate) lots to receive homestead protection under Texas law. *See* TEX. PROP. CODE § 41.002(a).

12

Second, the cases cited to support the dictum footnote in *Perry* do not appear to directly support the legal propositions contained in the footnote. *See Perry,* 345 F.3d at 318, n. 22*.* The *Perry* footnote cites to only one case, *Walker v. Dailey*, 290 S.W. 813 (Tex. Civ. App. 1927), for the proposition that separate land devoted primarily to generating income is not included in a rural homestead.[6] But the *Walker* case dealt with an *urban* homestead with *contiguous* tracts, where one of the tracts was abandoned and rented by the claimant. *See Walker*, 290 S.W. at 814. The *Walker* case did not deal with a *rural* homestead encompassing a *non-contiguous* (separate) tract that was actively used by the claimant to generate income and operate a business to support his family.

Third, the broad dictum expressed by the Fifth Circuit in *Perry* seems at odds with several of the basic legal principles set forth in the main text of the opinion. *Perry* contains the following statements of Texas homestead law in the body of the court's opinion: (a) the purpose of both the rural and urban homestead exemptions the "has been to protect *not only the home, but also the property that enables the head of the household to support the family*"; (b) Texas homestead laws must be interpreted "equally broadly" to protect the "family home *and* a place where the head of the household may pursue his 'calling' or 'business'"; (c) the purpose of the homestead exemption "is to shield from creditors a place for the family to live *and a place for the head of the family to exercise his calling or*

---

[6] The other cases cited in the *Perry* footnote do not hold that a rural homestead cannot include separate tracts used to generate income to support the family. Two of the cited cases recognize that under Texas law, a rural homestead claimant need not reside on the separate tract, so long as the separate tract is used for the "support of the family." *See In re Brooks*, 233 B.R. 696, 700 (Bankr. N.D. Tex. 1999); *In re Mitchell*, 132 B.R. 553, 565 (Bankr. W. D. Tex. 1991) (supporting citations omitted). The other two cited cases deal with urban, contiguous tracts claimed as a homestead—not rural, separate tracts. *See Continental Inv. Co. v. Schmeich*, 145 S.W. 2d 219, 220-1 (Tex. Civ. App.—Galveston 1940, writ ref'd); *Seidemann*, 75 S.W.2d at 168-69.

*business* to enable him to support the family" and that a rural homestead serves "both purposes"; and (d) the Texas rural homestead exemption "should not be construed as reserving merely a residence where a family may eat, drink and sleep, *but also* a place where the head or members may pursue such *business* or avocation as is necessary for the support and comfort of the family." *See Perry,* 345 F. 3d at 316-7 (emphasis added) (supporting citations omitted).

Finally, several court decisions—decided before and after *Perry*—have found that non-contiguous rural property used to support the debtor's family is part of the protected rural homestead, even if the debtor resides on a separate tract.

For example, in *Crump*, the debtors claimed two non-contiguous tracts about nine miles apart as their rural homestead. *In re Crump*, 533 B.R. 567, 569-70 (Bankr. N.D. Tex. 2015). One tract was used as the debtors' residence, and the other non-contiguous tract had been farmed by the debtors to support their family. *Id.* at 570. An objection to the debtors' rural homestead claim was made as to the separate farming tract, on the basis that the tract had been "abandoned" by the debtors when it was leased as a saltwater disposal facility and to a sharecropper. The *Crump* court found that the separate farming tract had not been abandoned by the debtors, citing the Fifth Circuit decision in *Perry*. *Id.* at 573-4. In so doing, the court in *Crump* held that the uninhabited farming tract was used for the "comfort, convenience or support of the family" and that the farming of the uninhabited tract had a "sufficient nexus" to the residential tract, entitling the uninhabited tract to protection as part of the rural homestead. 533 B.R. at 572 (supporting citations omitted). In short, the *Crump* court allowed a debtor to claim both a residence

and non-contiguous, income-producing property that was used to support the debtor's family as a rural homestead.

Similarly, in *Baker*, the debtor claimed two separate tracts of land as a rural homestead. *In re Baker*, 307 B.R. 860, 862 (Bankr. N.D. Tex. 2003). The debtor resided on one tract. The other tract was income-producing, as the debtor received payments through the Conservation Reserve Program in return for taking the tract out of cultivation. The uninhabited tract was also used occasionally by the debtor's son for hunting. Recognizing that the separate, uninhabited tract must be used in connection with the residential tract for the "comfort, convenience or support of the family," the *Baker* court held that the income-producing tract was part of the debtor's rural homestead. *Baker*, 307 B.R. at 863-64 (supporting citations omitted). The *Baker* court noted that "mere economic support through collection of rent alone"—without the debtor's present right to possession of the property—would not have been sufficient to protect the uninhabited tract as a rural homestead. 307 B.R. at 863. In short, the *Baker* court allowed a debtor to claim as a rural homestead both a residence and non-contiguous, income-producing property used by a debtor for support.

Indeed, Texas courts have often recognized that separate, non-contiguous, rural property is also protected by the rural homestead exemption when debtors demonstrate their active use of the separate land to "support their family." *See, e.g.*, *Riley v. Riley*, 972 S. W. 2d 149, 154 (Tex. App. –Texarkana 1998, no pet.) ("[t]o establish a homestead claim in rural property, the claimant must reside on part of the property and use the property for purposes of a home, although the claimant need not reside on all the parcels so long as the other tracts are used for the support of the family"); *In re Webb*, 263 B.R.

15

788, 792 (Bankr. W.D. Tex. 2001) (supporting citations omitted). In an early rural homestead case, the Texas Supreme Court determined that the debtor "impressed the homestead character upon" four non-contiguous parcels separate from the tract where he lived, because the debtor demonstrated that he had "personally worked" each of the separate parcels. *Cocke v. Conquest*, 35 S.W.2d 673, 678 (Tex. 1931).

Consistent with these decisions, courts have recognized that a debtor's receipt of *passive* income from rural non-contiguous property—such as mere rent collection—is not sufficient to create rural homestead protection for the non-contiguous property. *See, e.g.*, *Norra*, 421 B.R. at 792; *In re Brown*, 78 B.R. 486, 487 (Bankr. N.D. Tex. 1987); *see also Perry*, 345 F.3d at 318-19. Courts have also denied a rural homestead exemption when the claimant did not presently use the non-contiguous property to generate income. *See, e.g.*, *In re Saldana*, 531 B.R. 141, 158-59 (Bankr. N.D. Tex. 2015); *Palmer*, 391 B.R. at 391-92.

Several courts have also required the claimant to demonstrate that an active "nexus" exists between the residence tract and the non-contiguous tract to satisfy the "purposes of a rural home" standard under the Texas Property Code. *See, e.g.*, *PaineWebber v. Murray*, 260 B.R. 815, 830 (E. D. Tex. 2001); *Crump*, 533 B.R. at 572; *Schott*, 449 B.R. at 705; *In re Palmer,* 391 B.R. at 392; *see* TEX. PROP. CODE § 41.002(b).

In *Murray*, for example, the district court explained that, "[u]nless the noncontiguous tract somehow supports the home, it has no *nexus* with the residence tract and is nothing more than another piece of property," and therefore, "a claimant must demonstrate distinct evidence that the noncontiguous piece of property is associated with the residence tract and that it is more than a separate plot of land." 260 B.R. at 830

16

(emphasis added). In *Murray*, the court concluded that the debtor established this "nexus" on his non-contiguous tract because he used it to cut wood and for hunting. *Id.* at 831. Similarly, in *Crump*, the court concluded that the use of the separate, non-contiguous tract for farming established a nexus to the debtor's residential tract sufficient to qualify it as part of their homestead. 533 B.R. at 572.[7]

In the other decisions requiring the presence of a nexus between the separate rural properties, the courts held that the claimants failed to show that the non-contiguous property was associated with their residential tracts because the claimants did not presently use the separate property in question. Instead, the claimants, in each case, only expressed an *intent* to use the separate property at some point in the future. In *Schott*, the court decided that the debtor could not claim the separate tract in question (a golf course) as part of his rural homestead, because the tract was investment property that the debtor intended to develop in the future. 449 B.R. at 706. The court in *Palmer* spotted similar issues, concluding that the debtor's future intent to use a separate, non-contiguous tract for haymaking, a cattle business, and dog training did not establish its nexus with the residential property sufficient to provide rural homestead protection on the separate parcel. 391 B.R. at 392.

---

[7] The Court recognizes that many of these Texas cases allowing a rural homestead exemption to cover separate tracts involved use of the separate tracts for agricultural purposes. However, the Fifth Circuit recognized in *Perry* that operation of a non-agricultural business on a rural homestead did not sacrifice the homestead character of that portion of the property. *See Perry*, 345 F. 3d at 319. The Fifth Circuit has also rejected the notion that a debtor must demonstrate that the land is used for "agricultural" or other "rural" economic activity to be entitled to protection as a rural homestead. *See Rush Truck Centers v. Bouchie (In re Bouchie)*, 324 F. 3d 780, 785-6 (5th Cir. 2003) (per curiam). Further, no issue was raised by the Creditor in the instant case that the Body Shop was disqualified from rural homestead protection because it was not an agriculturally based business.

### 3. *The Body Shop is Exempt Rural Homestead Property*

After carefully considering the relevant principles of Texas homestead law, the Court concludes that the Body Shop has been properly claimed by the Debtors as part of their exempt rural homestead. Although the Body Shop is located on a separate (non-contiguous) parcel from their rural Residence, the Texas Constitution and Texas Property Code expressly provide rural homestead protection for a non-contiguous parcel of land.

Under Texas law, rural homestead protection extends to both property where the family lives and to property where the claimant operates a business to support the family. Here, the Debtors' business, the Body Shop, is located on rural property. The Debtors actively work at the Body Shop and earn income necessary to support their family and their Residence. Moreover, the income earned by the Debtors from the Body Shop is not passive income; instead, the Debtors themselves consistently spend considerable time working at the Body Shop to earn their living.

Additionally, to the extent necessary, the Debtors have established a nexus between the Body Shop and their Residence sufficient to make the Body Shop part of their rural homestead. The Body Shop is actually used by the Debtors to repair and maintain household items, make improvements to the Residence, store equipment used at the Residence, and repair their personal cars. The Body Shop also has a shower, kitchen and other facilities used and normally associated with a home. In many ways, the Body Shop is as an extension of the Residence, akin to a garage, tool shed, or living quarters normally within the confines of a household.

Homesteads are "favorites of the law" in Texas, and courts liberally construe Texas homestead protections. The Debtors have established that their Body Shop, as well as

their Residence, is protected as a rural homestead under Texas law.

# V
# **CONCLUSION**

For the reasons set forth in this Opinion, the Court will deny the Creditor's Objection to the Debtors' homestead exemption. The Court will enter a separate Order denying the Objection, for the reasons set forth by the Court in this Opinion.

###